FILED
2021 Feb-03  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DENISE VAUGHN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:19-CV-02007-RDP** |
| | } | |
| **ANDREW SAUL,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OF DECISION</u>

Denise Vaughn ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB").  *See* 42 U.S.C. § 405(g).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      PROCEEDINGS BELOW

On August 4, 2016, Plaintiff filed an application for disability and DIB alleging a period of disability beginning on June 1, 2016.  (R. 62, 135-36).  Plaintiff's application was denied by the Social Security Administration on September 30, 2016.  (R. 61, 79-83).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  (R. 86-88).  Plaintiff's request was granted, and a hearing was held on July 24, 2018 before ALJ Cynthia G. Weaver.  (R. 93-97).  Plaintiff, her counsel, and vocational expert ("VE") John W. McKinny all attended the hearing.  (R. 35-60).  On December 4, 2018, the ALJ entered her decision denying Plaintiff's application for disability

and DIB. (R. 12-29). The ALJ determined that Plaintiff had not been disabled within the meaning of §§ 216(i) and 223(d) of the Act from August 4, 2016, through the date of the decision. (R. 29). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-6), making the ALJ's decision the final decision of the Commissioner and ripe for judicial review under 42 U.S.C. § 405(g).

## II.     FACTS

At the time of the hearing, Plaintiff was 50 years old, had acquired a high school diploma, and possessed an associate degree for medical office administration after attending two years of college. (R. 39, 135, 200-01). The VE testified that Plaintiff's previous work experience would be described as a hand packager, cafeteria cook, daycare worker, and a fast-food worker. (R. 52-53).

Plaintiff claims that she has been disabled since June 1, 2016. (R. 135). She claims to suffer from physical impairments that affect her ability to work. (R. 38-39). Plaintiff alleges that her ailments prevent her from sitting or standing for long periods of time, affect her ability to speak, and cause her legs to become so weak to the point of falling. (R. 39-42, 46-47). In a written report, dated August 26, 2016, Plaintiff asserts the following: she does not do much during the day; experiences leg pain; has trouble standing and walking; goes outside once a day; does not drive; is able to pay bills and handle a savings account; can watch television and search the internet; can talk with friends when they visit; can attend church; can maintain attention for a long time; and is able to follow written and spoken instructions well. (R. 202-07). Plaintiff testified that she has a short concentration, is forgetful, and typically remains in bed all day, but can occasionally walk with the assistance of a cane. (R. 47, 52). Additionally, Plaintiff claims that she requires assistance going to the restroom, bathing, dressing and undressing, and with meal preparation. (R.

48-50).  Plaintiff is currently living with her son and a friend who assist Plaintiff with her needs. (*Id.*).

Plaintiff sought treatment at Pulmonary Sleep Associates on July 29, 2016, after visiting the center and complaining of shortness of breath, a headache, hoarseness and clearing of throat. (R. 274).  During that visit, examination findings indicate that Plaintiff denied having depression, suicidal ideations, sore throat and thrush, paralysis, or memory loss.  (R. 274-75). Plaintiff demonstrated normal respiration and unlabored breathing sounds; no crackles or wheezes; clear percussion of sound; normal gait; oriented to person, place, and time; and a normal mood and affect.  (R. 275-76).  Plaintiff was discharged the same day with a diagnosis of unspecific cerebral infarction and dysphagia following cerebral infarction.  (R. 276).

Plaintiff received medical treatment at the Crestwood Medical Center from June 2016 through August 2016.  (R. 250-73, 281-85, 290-372).  A recurring theme found in the records throughout Plaintiff's medical treatment during this timeframe is her complaint of dyspnea, vertigo, and weakness in the right upper extremity and left lower extremity.  (R. 250, 252-53, 255-56, 260-67, 282, 299, 355-56).  Despite Plaintiff's constant complaints of weakness and pain, examination records (including imaging reports, treatment notes, and final reports), do not indicate any significant physical abnormalities.  For instance, imaging reports from Plaintiff's visits in June 2016 indicate that despite her claim of dyspnea and shortness of breath, her lungs were clear and normal in volume, the trachea was midline, both ventricles and atriums were normal in size and function, and her skeletal structures were unremarkable in appearance.  (R. 246, 250).  The imaging reports further note that there were no acute cardiopulmonary findings, no significant valvular abnormalities to her heart, no significant abnormalities of her neck arteries, and no acute intracranial abnormalities.  (R. 252-53).  However, the imaging reports do note that Plaintiff

3

experienced mild degenerative facet changes in her left leg and right-sided mastoid fluid/mucosal edema in her right arm. (*Id.*). Treatment notes from her discharge on June 7, 2016, indicate that Plaintiff's dizziness had resolved and the numbness in her right arm and left leg had improved but had not returned to baseline levels. (R. 256). Plaintiff visited the medical center in July 2016, and radiology reports indicate no sonographic evidence of deep venous thrombosis in either lower extremity and that there was normal venous flow in both the right and left lower extremities. (R. 272).

On August 21, 2016, Plaintiff was admitted to Crestwood Medical Center. She again complained of dizziness, bilateral lower extremity weakness, and left upper extremity weakness. (R. 281, 283). The discharge summary from her visit indicates that a repeat MRI of Plaintiff's brain, cervical thoracic, and lumbar spine was conducted, which revealed mild degenerative changes, but no acute findings were found. (R. 282). The hospital records also note that Plaintiff was referred to physical, occupational, and speech therapies, and her weakness improved spontaneously and she was able to ambulate with a walker and assistance. (*Id.*). Plaintiff was prescribed Aspirin and Lipitor and discharged. (*Id.*).

On September 26, 2016, Plaintiff presented to Dr. Sherry A. Lewis, a treating physician, primarily complaining of a mild stroke and problems breathing. (R. 374). Dr. Lewis diagnosed Plaintiff with a stroke versus a conversion reaction, dyspnea, migraines, and morbid obesity. (R. 378). Dr. Lewis conducted an evaluation of Plaintiff, noting that she uses a walker without prescription or recommendation of a physician. (R. 376). Additionally, Dr. Lewis observed that Plaintiff inconsistently dragged her feet which appeared as "almost like a dance that came and went with some periods of normalcy." (*Id.*). Dr. Lewis further noted that Plaintiff could get on the scales, climb upon the examination table, bend her knees, take her shoes off, tie her shoes,

make a fist, and squat without the assistance of the walker, yet drove herself to the examination without the assistance of others.  (R. 376, 378).  Furthermore, Dr. Lewis' examination revealed that Plaintiff exhibited clear lungs, non-tender joints with full range of motion, normal muscle strength, normal musculoskeletal movements, good cognition, intact reflexes, and good affect.  (R. 376-78, 381-82).

During November 2016, Dr. Hector Caballero, a neurologist, conducted examinations of Plaintiff, reviewing scans of her brain, head, and spine.  (R. 388-401).  Plaintiff's brain and head scans failed to reveal any evidence of vessel disease, acute intracranial abnormalities, or abnormalities of any kind.  (R. 388).  Plaintiff demonstrated mild weakness, an ataxic gait, and exhibited intact extremity sensations.  (R. 388, 390).  Plaintiff's cervical spine MRI scan indicated minimal C4-5-disc bulging, with no significant compromises, and mild C3-4 and C4-5 degenerative changes.  (R. 391, 393).  The MRI of Plaintiff's lumbar spine revealed mild facet degenerative changes at the L3-4 and L3-4 levels; however, no significant disc abnormality or stenosis was present.  (R. 394-95, 397).

In January 2017, Plaintiff returned to Crestwood Medical Center to receive treatment and examinations regarding her CT and MRI scans.  (R. 542-43).  These scans ruled out stroke as a cause of Plaintiff's problems and were negative for acute intracranial abnormality.  (*Id.*).  In July 2017, Plaintiff's examinations revealed decreased strength in her lower left extremity; however, Plaintiff displayed intact extremity and back movements, normal speech, normal appearing joints, and unlabored, normal respiration.  (R.  548, 552).  Additionally, these reports indicate that there were no signs of swelling, gross sensation deficits, or pain detected.  (*Id.*).  During a visit to the medical center in March 2018, after Plaintiff's vehicle was hit from behind, Plaintiff complained of lumbar pain.  (R. 577-78).  Plaintiff's examination findings indicate she had no functional

deficits and that she experienced moderate lumbar tenderness, but with normal spinal alignment. (R. 578). Plaintiff's extremities were normal in range, movement, and appearance, she exhibited normal mentation, and displayed normal memory function. (R. 581). Despite the pain arising from the accident, the examinations revealed no significant abnormality of Plaintiff's lumbar spine or brain. (R. 578, 581).

From January 2017 to May 2017, Plaintiff began physical therapy at Mandeville Physical Therapy and Wellness. (R. 403-95). During these visits, Plaintiff was observed using an ambulatory assistive walking device. (R. 403, 410). At the conclusion of Plaintiff's visits, therapists repeatedly reported that Plaintiff's restorative potential was good. (R. 403, 407, 409, 410, 413, 415, 417, 419, 421, 423, 425, 427, 430, 469, 481). Plaintiff's discharge summary indicates that all of her short-term goals regarding mobility, decrease in pain, and increase in strength had been met. (R. 495). The discharge summary also indicates that Plaintiff's long-term goals had been achieved or had partially been achieved, indicating an improvement since beginning her therapy. (*Id.*).

From March 2017 through October 2017, Plaintiff was examined by Dr. Scott C. Hitchcock, a neurologist at The Clinic for Neurology. (R. 497-509). Dr. Hitchcock noted that "[i]n addition to the weakness of the left leg[,] she has also had some problems with tremor." (R. 497). Dr. Hitchcock's described Plaintiff's tremor as constantly occurring and that she was unaware of whether any member of her family had tremors. (*Id.*). Dr. Hitchcock's physical examination of Plaintiff revealed the following: she was not in acute distress; she was awake, alert, and oriented; her head was normocephalic; she displayed normal speech and normal language; no sign of a resting tremor, head tremor, voice tremor, or postural tremor; no visible cyanosis present; and no signs of lower extremity atrophy. (R. 498). However, Dr. Hitchcock noted, "when she

6

stands both legs shake[,] [w]hen she starts ambulating with her walker [] her legs also shake[,] [a]nd she appears to have difficulty advancing the left leg." (*Id.*). At the conclusion of this physical examination, Dr. Hitchcock recommended Plaintiff be seen by a movement disorder specialist, noting that "[a]t this point in time, I am at a loss to explain all of her symptoms." (*Id.*).

From February 2017 through May 2018, Plaintiff presented to City Clinic to address issues related to her diabetes mellitus without complications diagnosis and lower extremity weakness. (R. 613, 630-31). In July 2017, Plaintiff reported that her blood sugar had not recently been at normal levels; however, she had not been taking her prescribed medications. (R. 623). Plaintiff further reported that she had been doing better since she was back on her prescriptions but she did indicate that she was still having difficulty moving her legs. (*Id.*). During Plaintiff's October visits, she reported feeling well during this time, even stating that "she has been okay" and that "[h]er blood sugar has been good." (R. 618-19).

In December 2017 and February 2018, Plaintiff presented to Vanderbilt University Medical Center with complaints of weakness, numbness, gait abnormality, and a tremor in her left leg. (R. 510-19). The progress notes from these visits indicate that Plaintiff was well-appearing, well-nourished, in no apparent stress, and oriented to person, place, time, and present. (R. 513, 518). The progress note from the December 2017 visit states Plaintiff is "suffering from a tremor and gait abnormality," and provided that she would follow up with a neuromuscular specialist. (R. 514-15). Two months later in February 2018, Plaintiff's progress notes state that "[h]er difficulty with ambulation is out of proportion to her strength testing on exam." (R. 519). Additionally, MRI examinations of her brain and spine were "negative for any clear lesions" and there was "no evidence of a tremor on the [physical] exam" administered during the visit. (*Id.*).

In May 2018, Plaintiff was treated at Wellstone Clinical Associates for depression and anxiety. (R. 594-611). Plaintiff was neat and well-groomed, maintained good eye contact, exhibited appropriate behavior, was alert, coherent though process, had good insight, and demonstrated good attention and concentration. (R. 597-98, 601-02, 607-08). Plaintiff demonstrated no signs of aphasia, hallucinations, delusions, or suicidal/homicidal thoughts. (*Id.*).

After Plaintiff's hearing with the ALJ on September 30, 2016, Dr. Jon Rogers, provided a consultative neuropsychological evaluation of Plaintiff to help aid in the determination whether Plaintiff suffered from a conversion disorder. (R. 652). During this evaluation, Plaintiff indicated that she had been depressed, was easily fatigued, had trouble concentrating, struggled with decision making, was restless and irritable, had muscle tension, suffered from auditory hallucinations, exhibited slurred speech, and had a rapid heartbeat. (*Id.*). As a result of these complaints, Dr. Rogers administered a Wechsler Adult Intelligence Scale (WAIS) test, which Plaintiff scored a full-scale IQ of 76. (R. 654-55). Plaintiff exhibited impaired attention, memory functions, and speech; however, she demonstrated good appearance, appropriate attire, good grooming, a normal mood and affect, unpaired judgment, and good insight. (R. 654). Plaintiff was able to function independently but she was affected by impairments to her language dependent cognitive skills, visual, spatial, and constructional tasks, and immediate memory dependent cognitive abilities. (R. 655-56). After evaluating Plaintiff, Dr. Rogers diagnosed her with a major vascular neurocognitive disorder, speech sound disorder, somatic symptom disorder, an adjustment disorder with mixed anxiety and depression, and borderline intellectual functioning. (R. 657).

### III.    ALJ DECISION

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial work activity" is work activity that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, then the claimant is declared disabled.  20 C.F.R. § 404.1520(d).

Even if the claimant cannot be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  At the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f).  If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled.  20 C.F.R. § 404.1560(b)(3).  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(g)(1).  In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience.  20 C.F.R. §

404.1560(c).  Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability, June 1, 2016, and that she suffers from the following severe impairments that significantly limit her ability to perform basic work activities: degenerative disc disease, conversion disorder, and an intellectual disability.  (R. 18).  However, the ALJ concluded that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (*Id.*).  After consideration of the entire record, the ALJ determined that Plaintiff retains the RFC to perform a full range of light work as defined in 20 C.F.R. § 404.1567(a), with the following limitations: she is unable to climb ladders, ropes, scaffolds, but is frequently able to climb ramps and stairs, balance, stoop, crouch, kneel, bend, or crawl.  (R. 21).  Further, Plaintiff is to avoid dangerous moving unguarded machinery and unprotected heights, and is to perform jobs with only infrequent and well-explained workplace changes with no frequent telephonic communication, and to work where she can concentrate and stay on task for two hours at a time during an eight-hour workday.  (*Id.*).

Following the testimony of the VE, the ALJ determined that Plaintiff was precluded from performing any of her past relevant work as actually or generally performed.  (R. 27).  The ALJ further concluded that Plaintiff was not disabled as defined by the Act because Plaintiff's age, education, work experience, and RFC would have allowed her to perform jobs existing in significant numbers in the national economy at the date last insured.  (*Id.*).  The ALJ also concluded that Plaintiff had not been under a disability at any time from June 1, 2016, through the date of the ALJ's decision.  (R. 28).

## IV.  PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

Plaintiff advances three arguments in favor of reversing the ALJ's decision.  First, Plaintiff claims that the ALJ erred in finding that her depression, anxiety, history of transient ischemic attack ("TIA") or mini-stroke, and vascular neurocognitive disorder are not "severe" impairments. Second, Plaintiff contends that the ALJ improperly evaluated the opinion evidence of Dr. Rogers and Dr. Lewis.  Finally, Plaintiff alleges that the ALJ improperly evaluated whether she meets or equals the requirements under Listing 12.07 for somatic symptoms and related disorders.

## V.  STANDARD OF REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec*., 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).  Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r of Soc. Sec. Admin*., 496 F.3d 1253, 1260 (11th Cir. 2007).

## VI.   DISCUSSION

After careful review, the court concludes that the ALJ's findings are supported by substantial evidence and the ALJ's decision is in accordance with applicable law. The court evaluates each of Plaintiff's arguments below.

### A.   The ALJ Properly Found that Plaintiff's Symptoms Are Not Severe Impairments

First, Plaintiff contends that the ALJ should have found that in addition to finding that she suffers from degenerative disc disease, conversion disorder, and an intellectual disability, she has other severe impairments.  Specifically, Plaintiff asserts that her depression, anxiety, history of TIA or mini-stroke, and vascular neurocognitive disorder all constitute "severe" impairments. However, this argument fails because Plaintiff did not satisfy her burden that these additional impairments rise to the level of severe and whether the prevalence of such conditions, severe or not, caused work-related limitations.  Furthermore, the ALJ's decision is based on substantial evidence because the record makes clear that the ALJ determined the severity of Plaintiff's impairments in light of the medical records, opinion evidence, as well as from Plaintiff's testimony.

A claimant bears the burden of proving that their alleged impairment is a severe one.  *See* 20 C.F.R. §§ 404.1512; 416.912; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). An impairment or combination is considered "severe" if it "significantly limits [the] claimant's physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  "Basic work activities" include the ability to: (1) walk, stand, sit, lift, pull, reach, or carry; (2) see, hear, and speak; (3) understand, carry out, and remember simple instructions; (4) use judgment; (5) respond appropriately to supervision, co-workers, and unusual work situations; and (6) deal with changes in a routine work setting.  20 C.F.R. § 404.1521(a).  An impairment is not considered severe when

the abnormality is slight and its effect is so minimal that it would "not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Brown*, 800 F.2d 1026, 1031 (11th Cir. 1986).

After review, the court concludes that substantial evidence supports the ALJ's determination that Plaintiff's depression, anxiety, history of TIA or mini-stroke, and vascular neurocognitive disorder do not constitute "severe" impairments. The ALJ properly noted that no evidence in the record, either objective medical findings or subjective evidence, sufficiently demonstrates that Plaintiff's diabetes, anxiety, and depression rise to a level that impacts her ability to perform basic work activities during any consecutive twelve-month period. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). For example, Plaintiff was admitted to Crestwood Medical Center in June 2016 complaining of shortness of breath, vertigo, and extremity weakness; however, clinical examinations and diagnostic studies failed to identify any objective signs of significant abnormalities. (R. 246, 250-69). Additionally, the medical records regarding Plaintiff's MRI scans during June 2016, August 2016, and March 2018 fail to identify any significant findings that suggest Plaintiff's impairments severely limit her ability to perform basic work activities. (R. 253, 256-58, 281, 507). And although Plaintiff occasionally displayed extremity weakness and speech dysfunction, medical examiners did not note any significant objective abnormalities that were related to Plaintiff's TIA, mini-stroke, vascular neurocognitive disorder, or any other condition for any consecutive twelve-month period. (R. 275-76, 282, 284, 329-32, 337-40, 356, 359, 375-78, 381-82, 388, 390, 498, 500, 502, 513-14, 518-19, 523, 527, 535-36, 538-39, 548, 550, 552, 564-65, 568, 572-73, 578, 579, 580-81, 614).

Evidence in the record regarding mental findings was also unremarkable. Treatment notes from Crestwood Medical Center consistently state that Plaintiff's cognition was normal, she was

oriented to person, time, and place, her behavior, mood, and affect was normal, she exercised good judgment, did not appear anxious, and her attention concentration, and memory were normal. (R. 257-58, 276, 281-82, 331, 339, 356, 359, 378, 498, 500, 502, 523, 527, 536, 548, 550, 552, 565, 568, 569, 573, 579, 581, 614-18, 620-31, 635). Also, Plaintiff's medical records routinely indicate that she was rarely anxious and frequently denied any suicidal ideations. (R. 256-57, 275, 283-84, 297, 328, 337, 355, 356-57, 359, 374-75, 388, 390, 497, 499, 501, 516-17, 522, 526-27, 535, 538, 547, 551, 561, 564, 568, 572, 577, 580-81, 615, 630). Thus, without further evidence to the contrary, Plaintiff fails to prove that she has severe impairments due to anxiety, depression, TIA, mini-strike, or vascular neurocognitive disorder and that these impairments cause work-related limitations.

In sum, substantial evidence supports the ALJ's finding that Plaintiff's conditions do not qualify as severe impairments limiting her ability to work.

**B.    The ALJ Properly Considered the Evidence of Dr. Lewis and Dr. Rogers**

Next, Plaintiff contends that the ALJ improperly considered the findings and opinions of Dr. Sherry Lewis and Dr. Jon Rogers. For the reasons stated below, the court finds that the ALJ properly considered the opinion evidence of Dr. Lewis and the ALJ's decision to afford lesser weight to Dr. Rogers' opinion is supported by substantial evidence.

It is emphatically the duty of the ALJ to make a claimant's RFC determination at step four of the disability analysis. *See* 20 C.F.R. § 404.1546; *Moore v. Soc. Sec. Admin., Comm'r*, 649 F.App'x 941, 945 (11th Cir. 2016). This court has long recognized that the RFC determination is well within the scope of the ALJ's authority as it requires consideration of not only the relevant medical evidence but also the evidence contained in the record as a whole. *Smith v. Saul*, 413 F.Supp.3d 1140, 1144 (N.D. Ala. 2019). Requiring the ALJ to accept the conclusions of a medical

expert would fundamentally abdicate the Commissioner's statutory responsibility to determine whether the claimant is disabled and entitled to benefits.  *See* SSR 96-5p, 1996 WL 374183 (July 2, 1996).  Thus, the ALJ is not required to take the conclusions and recommendations of medical experts at face value.

The Eleventh Circuit requires an ALJ to give the medical opinions of a treating physician "substantial or considerable weight unless good cause is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Moreover, the opinion of a physician who examines a claimant on only one occasion is generally not entitled to great weight.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).   An ALJ is not required to give a treating physician's testimony substantial or considerable weight if: (1) it is not supported by other evidence in the record; (2) the evidentiary record supports a contrary finding; or (3) the treating physician's opinion is either conclusory or inconsistent with their own treatment records.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  When evaluating medical opinions, the ALJ must clearly articulate the weight given to different medical opinions and the reasons for doing so.  *Id.*  Generally, the more consistent a physician's opinion is within the record as a whole, the more weight an ALJ may place on that opinion.  20 C.F.R. § 404.1527(c)(4).

Here, Dr. Lewis and Dr. Rogers each examined Plaintiff only once.  (R. 373-82, 647-50, 651-59).  As such, neither doctor possessed the requisite longitudinal relationship with Plaintiff that is necessary to be considered a treating physician.  *See* 20 C.F.R. § 404.1502.  Accordingly, the opinions of Dr. Rogers and Dr. Lewis are not entitled to any special deference or consideration. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155 1158 (11th Cir. 2004); *see also McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  Nevertheless, the record makes clear that the ALJ

thoroughly evaluated Dr. Lewis' and Dr. Rogers' reports, and both opinions support the ALJ's RFC findings that Plaintiff can perform a full range of light work and can concentrate and stay on task for two hours at a time, climb stairs and ramps, balance, stoop, crouch, bend, kneel, or crawl. (R. 23, 375-78, 381-82, 648-49, 655-67).

The ALJ properly considered the opinion evidence of Dr. Lewis in her decision. The ALJ's analysis of Dr. Lewis consisted of analyzing (1) Plaintiff's subjective complaints, (2) Dr. Lewis' findings, and (3) the totality of objective medical evidence in the record. (R. 23). After analyzing each portion of evidence and weighing against another, the ALJ found that Plaintiff's asserted level of impairment is inconsistent with both Dr. Lewis' opinion and the totality of the objective medical evidence. (*Id.*). For example, Dr. Lewis' examination report indicates that Plaintiff presented complaining of issues walking, breathing, and with a stroke. (R. 374). However, Plaintiff's complaint of a stroke is in direct contrast to her previous brain and head scan results, which were examined by several physicians on multiple occasions and found to be unremarkable. (R. 253, 256-58, 281, 507). Moreover, Dr. Lewis' findings indicate that Plaintiff's neck, her range of motion, cardiovascular, and respiratory systems were all normal. (R. 376-77, 381).

Additional findings by Dr. Lewis also indicate that Plaintiff's musculoskeletal system and back were unremarkable in nature and do not note any existence of neurological deficits despite Plaintiff's allegations of persistent issues. (R. 377-78, 381-82). Dr. Lewis also found that Plaintiff was able to get on the scales, climb upon the examination table, bend her knees as she sat on the table, take her shoes off and put back on, and even "tie[] a nice bow for each shoe." (R. 376). Dr. Lewis' report notes that Plaintiff stated "she was unable to walk without" an ambulatory assistive device—a walker. (*Id.*). However, Dr. Lewis' findings provide that when Plaintiff walked with the ambulatory assistive device, "she move[d] the rest of her body wrenching slightly from front

to back with her trunk turned slightly to the right, and her head with an independent movement of a different rhythm." (*Id.*). Further, the findings state that "[t]his body movement was almost like a dance that came and went with some periods of normalcy." (*Id.*). Plaintiff's reported subjective level of impairment, when weighed against the findings of Dr. Lewis and the objective medical record evidence, reveals significant discrepancies regarding Plaintiff's level of mobility. As the record makes clear, the ALJ properly took these factors into consideration when making her RFC determination. The ALJ properly considered the opinion evidence of Dr. Lewis in relation to Plaintiff's subjective claims and the objective medical record evidence.

Furthermore, substantial evidence further supports the ALJ's finding that lesser weight be given to Dr. Rogers' examination report and opinion due to the inconsistency of the findings against the totality of the evidence in the record as well. After the ALJ hearing, the ALJ tasked Dr. Rogers "for the purpose of confirming if [Plaintiff] in fact had a conversion disorder." (R. 25). However, the record provides that Dr. Rogers did not address this issue and instead diagnosed Plaintiff as having a major vascular neurocognitive disorder, speech sound disorder, somatic symptom disorder, adjustment disorder, and borderline intellectual functioning. (R. 657). Additionally, Dr. Rogers "administered a Wechsler Adult Intelligence Scale (WAIS)" which Plaintiff "earned a full-scale IQ score of 76." (R. 655). After reviewing the opinion of Dr. Rogers in relation to the record as a whole, the ALJ afforded less weight to both Dr. Rogers' opinion regarding Plaintiff's work limitations and her IQ score. (R. 25-26). In doing so, the ALJ clearly articulated which portions of Dr. Rogers' examination findings and opinion were afforded less weight, in addition to articulating sufficient reasons for doing so. (*Id.*).

First, there is substantial evidence in the record that supports the ALJ's decision to afford less weight to Plaintiff's IQ score given the fact that she was able to complete two years of college

courses, as well as her ability to perform jobs with at least some level of skill.  (R. 39, 52-59).

Given Plaintiff's work history as a hand packager, cafeteria cook, daycare worker, and fast-food

worker, her achievable IQ score is inconsistent with the capabilities and skills indicated throughout

the entirety of the record.  For these reasons, the ALJ's decision to afford little probative weight

to Plaintiff's IQ score of 76 is proper.

Second, substantial evidence in the record supports the ALJ's decision to afford some

weight to Dr. Rogers' examination findings and opinion evidence.  After his examination of

Plaintiff, Dr. Rogers opined that Plaintiff had moderate limitations in understanding, remembering,

and carrying out *simple* instructions, but exhibited marked limitations in understanding,

remembering, and carrying out *complex* instructions. (R. 648). She also had moderate restrictions

in interacting with co-workers, marked restrictions in responding appropriately to work changes,

and mild difficulties interacting appropriately with the public and supervisors.  (R. 649).  In making

these conclusions it appears that Dr. Rogers was relying on subjective evidence provided by

Plaintiff as there is no explanation for these contrary findings in the objective medical evidence at

his disposal.  (R. 651-58).  Further, the ALJ clearly articulated which portions of Dr. Rogers'

findings were affected by these determinations, and explained why Plaintiff's claim of suffering a

stroke and the results of the WAIS test were contrary to the objective medical evidence in the

record.  As such, good cause exists for the ALJ to afford lesser weight to Dr. Rogers' opinion and

findings.

### C.     Plaintiff Failed to Meet Her Burden Proving Her Impairments Met or Equaled Listing 12.07

Finally, Plaintiff contends that the ALJ did not properly consider whether she met or

equaled any of the impairments listed in Appendix 1 and that the ALJ failed to follow the disability

sequential analysis outlined in 20 C.F.R. § 404.1520(d). After review of the entire record, the court

concludes that the ALJ properly followed the disability sequential evaluation analysis. Additionally, although the ALJ did not explicitly state that Plaintiff's impairments were not contained in listing 12.07, such a determination was implicit in the ALJ's decision.

The ALJ was clearly familiar with the disability sequential evaluation process, particularly given her statements denoting the relevant law.  (R. 18-21).  The ALJ recognized that an affirmative determination regarding the applicability of any Appendix 1 listing of the third step of the disability sequential analysis would require a determination that Plaintiff was disabled.  (*Id.*). At step three of the disability sequential evaluation process, the record indicates that the ALJ considered Plaintiff's impairments alone and in combination and found Plaintiff's impairments do not meet or equal those listed in Appendix 1.  (R. 18-19).  Plaintiff contends that because the ALJ's determination did not specifically contain an analysis that included listing 12.07 the ALJ committed reversible error.  However, while Appendix 1 must be considered when making a disability determination, an ALJ is not required to recite every single piece of evidence leading to the disability determination.  *See Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir. 1984). Accordingly, "there may be an implied finding that a claimant does not meet a listing." *Hutchison v. Brown*, 787 F.2d 1461, 1463 (11th Cir. 1986).  Here, the ALJ properly employed the disability sequential evaluation process with her decision and found that Plaintiff's impairments do not rise to any of the impairments contained within Appendix 1.  Moreover, the ALJ is not required to list each and every piece of evidence leading to her disability determination.  *Id.*  Thus, it is clear that the ALJ found that Plaintiff did not prove she met or equaled any of the impairments listed in Appendix 1.

The ALJ's finding that Plaintiff's impairments do not meet those listed in Appendix 1, and the resulting determination that Plaintiff is not disabled, is supported by substantial evidence in

the record.  Plaintiff bears the burden of proving that her impairments meet or equal a listing within Appendix 1.  *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir 1991).  In this case, Plaintiff failed to do so.  First, there is objective medical evidence that simply does not support the level of limitation that Plaintiff asserts she has.  For instance, the record provides that Plaintiff is only moderately limited regarding understanding, remembering, or applying information, has the intellectual capacity to complete two years of college, has the capacity and history to perform semi-skilled work, and is able to adequately read, understand, and answer questions.  (R. 39, 52-54, 200-01, 205-07).  Moreover, the record indicates that Plaintiff is able to pay attention for long periods of time and only has moderate limitations with regard to concentration, persistence, or maintaining pace.  (R. 207, 648-49).  Furthermore, the ALJ sufficiently considered multiple criteria portions of 12.04, 12.05, 12.06, and 12.07 in formulating the decision to deny disability and DIB.  (R. 18-21).  Due to the ALJ's consideration of the evidence in relation to the criteria listings and Plaintiff's failure to definitively prove her conditions meet or equal any of the listings in Appendix 1, this court concludes that the ALJ's finding is based on substantial evidence in the record.

In summary, Plaintiff has the burden of proving disability.  Here, she failed to do so.  Substantial evidence in the record supports the ALJ's finding that Plaintiff did not meet any of the impairments contained in Appendix 1, specifically listing 12.07.

## VII.   CONCLUSION

After review of the administrative record, and considering all of Plaintiff's arguments, the court finds the Commissioner's decision to deny Plaintiff's disability and DIB application is supported by substantial evidence and in accordance with the applicable law.  A separate order that is consistent with this memorandum of decision will be entered.

**DONE** and **ORDERED** this February 3, 2021.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE